UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LAURA GALVAN, Individually and on behalf of the SBC Pension Benefit Plan </br></br>  Plaintiff, </br></br> VS. </br></br> SBC PENSION BENEFIT PLAN, et al. </br></br>  Defendants, </br></br> VS. </br></br> STANLEY DAVIS </br></br>  Third-party Defendant. | Civil No. SA-04-CV-333-XR |

**ORDER**

On this date, the Court considered Plaintiff's motion for leave to file an Original Complaint against Third-party Defendant Stanley Davis and Plaintiff's motion to dismiss Third-party Defendant's counterclaim against Plaintiff. For the reasons discussed below, Plaintiffs' motion for leave to file is GRANTED IN PART AND DENIED IN PART (Docket No. 63), and Plaintiff's motion to dismiss is GRANTED (Docket No. 72). The Court concludes that Plaintiff's state law constructive trust claim against Davis is completely preempted by ERISA. The Court will grant Plaintiff leave to file an ERISA claim against Davis; however, the Court expresses no opinion on the merits of that claim. Davis' modification of child support counterclaim is DISMISSED WITHOUT PREJUDICE because the marital relations exception divests this Court of subject matter jurisdiction over that claim.

## I. Factual & Procedural Background

Plaintiff, Laura Galvan, and her former husband, Stanley Davis, were divorced in Missouri in 1995. At that time, Davis was an employee of SBC Communications, Inc. ("SBC") and a participant in the SBC Pension Benefit Plan ("the Plan"). In the Missouri divorce action, the Missouri court entered a separation agreement, which awarded Plaintiff an interest in Davis' benefits under the Plan, pursuant to a qualified domestic relations order ("QDRO"). The QDRO awarded Plaintiff fifty percent of Davis' benefit in the Plan as of March 16, 1995, fifty percent of any early retirement subsidy that Davis might receive from the Plan as a result of a decision to take early retirement, and certain survivorship rights. After examining the QDRO, the Secretary of the Employees' Benefit Committee for the Plan notified Plaintiff that she was entitled to fifty percent of Davis' accrued benefit as of March 16, 1995, which was calculated as a monthly annuity equal to $639.61 per month.

On November 15, 2000, Davis voluntarily elected to retire from the Plan prior to normal retirement age and elected to be paid an early retirement subsidy. On February 8, 2001, Plaintiff sent a letter to the Plan Administrator requesting information on the subsidy paid to Davis. In a letter dated April 10, 2001, the Plan eventually responded and offered Plaintiff a life annuity payable over Davis's lifetime, equal to $639.91, with a lump sum value of $106,921.74.

On March 5, 2004, after subsequent correspondence between the parties had failed to resolve the dispute, Plaintiff submitted a claim for benefits with the Plan, seeking a portion of the early retirement benefits provided to Davis, as well as other benefits. The Plan sent a claim receipt confirmation to Plaintiff dated March 24, 2004, stating that Plaintiff "will receive a written response within ninety days from receipt of your claim." On April 20, 2004, Plaintiff filed the instant suit,

ostensibly to preserve her claims against any limitations defenses. On June 22, 2004, 92 days after the date the Plan received her claim, the Plan sent a letter, dated June 15, 2004, stating that it required an additional 90 days to research and respond to Plaintiff's claim.  On June 24, 2004, Plaintiff filed alternative motions to either abate or toll the statute of limitations, alerting the Court to the fact that Plaintiff had failed to fully exhaust administrative remedies. On August 30, 2004, Defendants filed a motion to dismiss, or alternatively to stay the proceedings until Plaintiff has fully exhausted her administrative remedies.  Plaintiff responded that Defendants had failed to follow the procedures outlined in the Plan and in the ERISA regulations and that she fully exhausted her administrative remedies.

On September 30, 2004, this Court dismissed without prejudice all of Plaintiff's claims against Defendants for failure to exhaust administrative remedies.  The Court concluded that although Defendants requested the ninety day extension of time to consider Plaintiff's claims one day late, Defendants acted in substantial compliance with ERISA regulations, and those regulations did not abolish the substantial compliance doctrine.  The Court concluded that both fiduciary and benefits claims under ERISA are subject to the administrative exhaustion requirement.  The Court noted that ERISA claims do not accrue under until an application for benefits is filed and denied, and the Court found that Plaintiff had filed both her Original and Amended Complaint before her administrative remedies were exhausted.

On September 29, 2004, one day before the Court signed the Order of dismissal, Plaintiff received a final administrative decision from the Plan denying her benefits claims.  Plaintiff filed a motion for reconsideration of the Court's Order of dismissal on October 12, 2006; however, the Court denied this motion because it found that Plaintiff had filed her ERISA Complaint before

receiving her final administrative decision. The Court concluded that Plaintiff must exhaust her administrative remedies *before* her Complaint is filed with the Court. The Court instructed Plaintiff that she "may now refile her claim and dispute the findings of Defendants in the administrative proceeding."

Plaintiff appealed the Court's decision to the Fifth Circuit, which affirmed in part, vacated in part, and remanded. The Fifth Circuit held that although benefits claims are subject to the administrative exhaustion requirement, fiduciary duty claims are not. The administrative exhaustion requirement applies to fiduciary duty claims that are disguised benefits claims, not to true fiduciary duty claims. The Fifth Circuit held the following:

> Because the district court did not consider whether Galvan's fiduciary duty claims for misallocation of Plan assets are disguised benefits claims, thus subject to [administrative] exhaustion, we remand for factual development of whether Galvan is pursing a fiduciary claim, which does not require administrative exhaustion, or a disguised benefits claim.

*Galvan v. SBC Pension Benefit Plan*, No. 04-51214, 2006 WL 2460879, *4 (5th Cir. August 23, 2006).

Regarding Plaintiff's benefit claims, the Fifth Circuit observed that a claim arising under ERISA does not accrue until an administrative claim has been denied. SBC received Galvan's administrative claim on March 22, 2004, and Galvan filed her Original Complaint on April 20, 2004. The Fifth Circuit concluded that the filing date of Plaintiff's Original Complaint (April 20th), not her Amended Complaint (June 24th), was the operative date for purposes of the exhaustion-of-administrative-remedies analysis. Consequently, the Fifth Circuit held that "the district court did not err in dismissing her [Plaintiff's] benefits claims without prejudice for lack of exhaustion."

After the case was remanded to this Court, Plaintiff filed a motion to amend her 2004

Complaint on October 20, 2006. This motion was unopposed, and the Court granted the motion on November 6, 2006. In granting the motion, the Court observed that Plaintiff had filed a new Complaint against the same Defendants on September 28, 2006 ("2006 Complaint"), which was identical to the proposed Second Amended Complaint ("2004 Complaint) attached to the motion to amend. *See* Civ. Action No. SA-06-CV-835-XR. Both the 2006 Complaint and the Second Amended 2004 Complaint contained, *inter alia*, benefits claims and fiduciary duty claims. The Court ordered Plaintiff to file a notice with the Court indicating how she intended to proceed in these two cases. *See* Docket No. 45.

Plaintiff timely filed a "Notice Regarding Civil Action No. SA-06-CV-325-XR and Motion to Consolidate" on November 11, 2006. Plaintiff informed the Court that since the Fifth Circuit affirmed the dismissal without prejudice of Plaintiff's benefit claims, Plaintiff believed that she was required to file a new Complaint to pursue those benefits claims. Plaintiff believed that a two-year statute of limitations might apply to her benefit claims.[1] Since the Plan originally denied her claim on September 29, 2004, Plaintiff believed that the two-year limitations period required her to file a new Complaint regarding her benefits claims by September 28, 2006. Furthermore, Plaintiff stated the following: "If this Court determines that Ms. Galvan may now amend her Complaint in this action to include her previously-dismissed benefit claims, then Ms. Galvan would dismiss her second

---

[1] Without deciding the issue, the Court questions whether a two-year statute of limitations applies to benefits claims under ERISA. *See Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992)(holding that for purposes of ERISA section 502(a)(1)(B) benefits claims (29 U.S.C. 1132(a)(1)(B)), the applicable statute of limitations is the state statute of limitations most analogous to the cause of action raised, which is the four-year Texas limitations statute governing suits sounding in contract); *see also Stahl v. Exxon Corp.*, 212 F. Supp. 2d 657, 666 (S.D. Tex. 2002)(same).

lawsuit. In the alternative, if this Court determines that Ms. Galvan may not amend her Complaint in this action to include benefit claims the Court previously dismissed, then Ms. Galvan would move this Court [to] consolidate the two actions pursuant to Fed. R. Civ. P. 42."

The Court granted Plaintiffs motion to consolidate her cases pursuant to Fed. R. Civ. P. 42(a) on December 6, 2006. *See* Docket No. 53. The Court noted that the consolidation did not result in a merger of the two cases and that the parties retained all the substantive rights and defenses in this consolidated action that they had prior to consolidation.

Defendants filed a Third-party Complaint against Davis on January 23, 2007, alleging a claim for contribution against Davis under ERISA in the event that Defendants are adjudged liable on Plaintiff's ERISA benefits claim. Defendants argue that Davis is liable for any overpayment of benefits paid to him by the Plan. In his answer to the Third-party Complaint, Davis, who is proceeding *pro se*, prayed that the Court "not let AT&T say 'oops' and make me pay for their mistake." Davis alleged that Defendants repeatedly assured him that their benefit calculations and distributions were correct.

On February 28, 2007, Plaintiff filed a motion for leave to file an Original Complaint against Third-party Defendant Davis pursuant to Fed. R. Civ. P. 14(a). Plaintiff alleged that under the QDRO, Davis is a constructive trustee for Plaintiff if he received any benefits from the Plan that were due to Plaintiff under the QDRO. On May 16, 2003, Plaintiff had filed a motion for contempt against Davis in Missouri ("Contempt Action"). In the Contempt Action, Plaintiff prayed that the state court order Davis to pay her sums he received from the Plan that were due to her under the QDRO. The Missouri state court action was stayed pending the resolution of the ERISA issues involved in this case.

Plaintiff requests that this Court exercise supplemental jurisdiction over her state law constructive trust claim against Davis. *See* 28 U.S.C. § 1367. In her motion, Plaintiff stated that "[under] her ERISA QDRO and fiduciary breach claims, Ms. Galvan asserts the Plan's fiduciaries caused the Plan *to pay* Mr. Davis benefits that were due to her under the QDRO. Under her state law claims against Mr. Davis, Ms. Galvan asserts that Mr. Davis *received* those benefits and that, because he retained them, he is liable to Ms. Galvan as a constructive trustee." (emphasis in original). Plaintiff claims that her federal claims against Defendants and her state law claims against Davis form part of the same case or controversy, such that a Third-party Complaint against Davis is appropriate under Rule 14(a).

In response, Davis denied that he has received any funds belonging to Plaintiff and reasserted that he relied on Defendants' reassurances that their benefit calculation and distribution were correct. In the concluding sentence of his response, Davis stated the following: "Also, party of that Missouri case involved a modification of child support payments based on my higher income . . . . I have been out of work for seven months and . . . maybe you [the Court] could revise the child support payment for me." Plaintiff has filed a motion to dismiss that putative counterclaim for lack of subject matter jurisdiction, arguing that this Court lacks jurisdiction over the claim under the domestic relations exception.

## II. Legal Analysis

**A.**  **Plaintiff's state law constructive trust claim against Davis is completely preempted by ERISA. The Court will grant Plaintiff leave to file an ERISA claim against Davis; however, the Court expresses no opinion on the merits of that claim.**

The Court finds that Plaintiff's state law constructive trust claim against Davis is completely preempted by ERISA, 29 U.S.C. § 1132(a)(1)(B). *See Callahan v. Callahan*, 247 F. Supp.2d 935,

943 (S.D. Ohio 2002). The Supreme Court has found that Congress intended to make causes of action within the scope of 29 U.S.C. § 1132(a)(1)(B), which allows plan participants or beneficiaries to bring a civil action to recover benefits due to them under the plan, either to enforce their rights under the terms of the plan or to clarify their rights to future benefits under the terms of the plan, removable to federal court under the doctrine of complete preemption. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987). ERISA's complete preemption recharacterizes Plaintiff's state law constructive trust claim against Davis into an ERISA claim. *See Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2005)(citing *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989)) (holding that for removal purposes, ERISA's preemptive power "recharacterizes" state law breach of contract claims into ERISA claims); *see Stahl v. Exxon Corp.*, 212 F. Supp.2d 657, 664-65 (S.D. Tex. 2002) ("It is clear that ERISA preempts a state law cause of action brought by an ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits . . . . In short, when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B)") (internal citations omitted). Although Plaintiff's state law constructive trust claim was not removed from state court, this Court believes that complete preemption still applies to that claim.

Plaintiff is an appropriate ERISA plaintiff. In *Boggs v. Boggs*, 520 U.S. 833 (1997), the Supreme Court stated the following:

> A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. [29 U.S.C.] § 1056(d)(3)(B)(I). A domestic relations order, in turn, is any judgment, decree, or order that concerns "the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is "made pursuant to a State domestic relations law (including a community property law)." §

>   1056(d)(3)(B)(ii). A domestic relations order must meet certain requirements to qualify as a QDRO. *See* §§ 1056(d)(3)(C)-(E). QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general pre-emption clause, § 1144(b)(7). In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J).

*Id.* at 846-47. Plaintiff, as an alternative payee of Davis' interest in the Plan under the QDRO, is a "beneficiary" who is entitled to bring suit under ERISA, 29 U.S.C. § 1132(a)(1)(B). *See Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999).

The Court finds that Plaintiff's state law constructive trust claim against Davis seeks "to recover benefits due to [her] under the terms of [the] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff's state law constructive trust claim against Davis falls within the scope of § 1132(a) and is completely preempted. *See Seaman v. Johnson*, 91 Fed. Appx. 465, 469-70 (6th Cir. 2004) ("As already discussed, the general rule of ERISA preemption contains an exception for qualified domestic relations orders. 29 U.S.C. § 1144(b)(7). Where, as here, the proper distribution of assets contained in an employee benefit plan is at issue, ERISA controls and presumptively preempts state law. 29 U.S.C. § 1144(a). Moreover, where the proper distribution of assets is arguably controlled by a state-court domestic relations order, the threshold question is whether that order represents a QDRO as defined by 29 U.S.C. § 1056 of ERISA. That initial question is one for the federal courts").

This case is similar to *Callahan v. Callahan*. 247 F. Supp.2d 935 (S.D. Ohio 2002). In *Callahan*, the ex-wife of an ERISA plan beneficiary sued her ex-husband, claiming that under the terms of the QDRO entered in their divorce, her ex-husband was required to transfer his entire

interest in the Keymark Profit-Sharing Plan ("Keymark Plan") to her. *Id.* at 938. Ms. Callahan alleged that her ex-husband's interest in the Keymark Plan "was greater than the amount that she received, in accordance with that Order [the QDRO]". *Id.* Ms. Callahan filed a motion for contempt in state court seeking to hold her ex-husband in contempt "for his failure to transfer of his interest in the Keymark Plan" to her in accordance with the QDRO. *Id.* Mr. Callahan removed the case to federal court, arguing that it was completely preempted by ERISA because Mrs. Callahan sought recovery of the proceeds of a benefit plan governed by ERISA. *Id.* The district court held that Mrs. Callahan's contempt action was completely preempted by ERISA and the "marital relations exception" to federal court jurisdiction did not apply. *Id.* at 941-45. Importantly, the district court had previously held that the Keymark Plan and Plan Administrator were necessary parties to the action and must be joined. *Id.* at 939.

In this case, Plaintiff's state law constructive trust claim originated in her state court contempt action against Davis. Plaintiff claims that benefits due to her under the terms of the QDRO were improperly distributed by the Plan and that Davis received benefits owed to her. The Court finds that this case is similar to *Callahan* and that Plaintiff's state law constructive trust claim is completely preempted by ERISA.

The Court expresses no opinion on the merits of Plaintiff's ERISA claim against Davis. In order to prevail on an ERISA claim against Davis, Plaintiff would need to demonstrate that Davis is an appropriate ERISA defendant. *See Harris Trust & Savs. Bank v. Salomon Smith Barney*, 530 U.S. 238, 246 (2000) (holding that 29 U.S.C. 1132(a)(3) "admits of no limit . . . on the universe of possible defendants"); *see Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 352 (5th Cir. 2003). Like section 1132(a)(3), section 1132(a)(1)(B)

does not limit the universe of possible defendants, and a section 1132(a)(3) equitable remedy might be available to Plaintiff in any event if the Court determines that Davis received benefits owed to Plaintiff.[2] The Court finds that the Plan and Plan Administrators are necessary parties to this ERISA case. Going forward, this Court will need to (1) determine whether the divorce agreement at issue constitutes a QDRO, (2) interpret the QDRO *de novo*, (3) determine the benefits payable to the parties under the terms of the QDRO, and (4) then determine liability, if any, for wrongful benefit calculation, distribution, or receipt. *See Matassarin*, 174 F.3d at 563-64. Plaintiff has requested that this Court "enforce the QDRO against Mr. Davis." Davis' liability to Plaintiff, if any, will be determined under ERISA. The Court will grant Plaintiff leave to file an ERISA claim against Davis; however, the Court expresses no opinion on the merits of that claim.

**B.    Davis' child support modification counterclaim is DISMISSED WITHOUT PREJUDICE because the domestic relations exception deprives this Court of subject matter jurisdiction over that claim.**

In his response to Plaintiff's motion for leave to file, Davis somewhat facetiously requested that this Court modify his child support obligations. Davis' child support modification counterclaim is DISMISSED WITHOUT PREJUDICE because the domestic relations exception deprives this Court of subject matter jurisdiction over that claim. *See Ankenbrandt v. Richards*, 504 US. 689

---

[2]In *Bombardier*, the Fifth Circuit held that a constructive trust is an equitable remedy available to plaintiffs in section 1132(a)(3) actions under ERISA. 354 F.3d at 358. A constructive trust "seeks to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan." *Id.* at 355. By its own terms, a section 1132(a)(3) claim may be brought by a beneficiary. *Id.* at 354. *Bombardier* held that section 1132(a)(3) constructive trust claim may be brought "against a non-fiduciary, non-'party in interest' attorney-at-law when he holds disputed settlement funds *on behalf of* a plan-participant client who is a traditional ERISA party." *Id.* at 353 (emphasis in original). If Plaintiff can avail herself of the constructive trust equitable remedy against Davis, which this Court does not decide, then the contours of that remedy will be defined by federal law, not Missouri state law.

(1992) (domestic relations exception divests federal courts of power to issue divorce, alimony and child custody decrees); *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077 (5th Cir. 1990) ("As a general rule, federal courts refuse to hear suits for divorce and alimony, child custody actions, disputes over visitation rights, suits to establish paternity and to obtain child support, and actions to enforce separation or divorce decrees still subject to state court modification"). Davis may pursue his child support modification claim in a state court of competent jurisdiction.

### III. Conclusion

Plaintiffs' motion for leave to file is GRANTED IN PART AND DENIED IN PART (Docket No. 63), and Plaintiff's motion to dismiss is GRANTED (Docket No. 72). The Court concludes that Plaintiff's state law constructive trust claim against Davis is completely preempted by ERISA. The Court will grant Plaintiff leave to file an ERISA claim against Davis; however, the Court expresses no opinion on the merits of that claim. Davis' modification of child support counterclaim is DISMISSED WITHOUT PREJUDICE because the marital relations exception divests this Court of subject matter jurisdiction over that claim.

It is so ORDERED.

SIGNED this 28th day of March, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE