UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LAURA GALVAN, Individually and on behalf of the SBC Pension Benefit Plan | ) ) ) |
| Plaintiff, | ) ) ) |
| VS. | ) ) ) |
| SBC PENSION BENEFIT PLAN, et al. | ) ) ) |
| Defendants, | ) ) |
| VS. | ) ) |
| STANLEY DAVIS | ) ) |
| Third-party Defendant. | ) |

Civil No. SA-04-CV-333-XR

**ORDER**

On this date, the Court considered Plaintiff's motion for reconsideration of the denial of Plaintiff's motion for interlocutory appeal and Defendants' motion for sanctions. For the reasons discussed below, Plaintiff's motion for reconsideration is DENIED (Docket No. 87), and Defendants' motion for sanctions is DENIED (Docket No. 88).

**I.       Plaintiff's motion for reconsideration is DENIED.**

Plaintiff argues that Plaintiff's state law constructive trust claim against Davis is not preempted because the benefits in his possession have already been distributed by the Plan. The Sixth Circuit, Ninth Circuit, and Tenth Circuit have held that once the benefits of an ERISA employee welfare benefit plan *have been distributed according to the plan documents*, ERISA does not preempt the imposition of a constructive trust on those benefits. *Central States, Southeast &*

*Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000) (emphasis added); *see also Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1081-83 (10th Cir. 1994) (en banc); *see also Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 955 (9th Cir. 1998), *abrogated on other grounds by Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). Phrasing its holding in a slightly different manner, the Sixth Circuit further stated that "once the benefits *have been released to the properly designated beneficiary*, the district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires." *Central States*, 227 F.3d at 679 (emphasis added).

The Court finds that Plaintiff is attempting to significantly expand the holding of the Sixth Circuit beyond its intended meaning. In *Central States*, the Sixth Circuit stated that in order to impose a constructive trust on ERISA benefits after distribution to a plan participant, the benefits first had to be released "to the properly designated [ERISA] beneficiary" and in "accordance with the plan documents." In this case, Plaintiff alleges just the opposite—that the plan distributed benefits to an *improper* ERISA beneficiary (Davis) *in violation of* the plan documents (the QDRO). This is why the Court balked at Plaintiff's request to allege a state law constructive trust claim against Davis—the Court has not yet interpreted the QDRO or determined whether AT&T violated ERISA by wrongfully distributing benefits to Davis. Indeed, the state court in Missouri stayed this same constructive trust claim in order for this Court to interpret the QDRO and determine AT&T's liability, if any, under ERISA for wrongful distribution of benefits.

*Central States, Emard,* and *Guidry* all involved situations where the courts found that the ERISA plans had distributed the correct amount of benefits to the proper ERISA beneficiary. The central issue in those cases was whether a constructive trust should nevertheless be imposed post-

distribution because it was inequitable to allow the otherwise proper ERISA beneficiary to retain those benefits. In *Guidry*, a third-party creditor was attempting to attach a plan participant's ERISA benefits post-distribution in order to satisfy a judgment. 39 F.3d at 1081. In *Central States*, the participant's wife attempted to impose a constructive trust on her husband's ERISA benefits because her husband changed his ERISA beneficiary designation in violation of a state court order that did not qualify as a QDRO. 227 F.3d at 677. The facts of *Emard* are similar to the facts of *Central States*. In all three of these cases, the ERISA plans had distributed the correct amount of benefits to the proper ERISA beneficiary. The plaintiffs in those cases were attempting to use state law as a vehicle for obtaining benefits that in equity and good conscience belonged to the plaintiffs, despite the fact that the distribution of benefits was proper under ERISA. In *Central States*, the Sixth Circuit was apparently concerned that a mechanical application of ERISA would work an injustice because the plaintiff had no remedy under ERISA.[1]

In this case, Plaintiff alleges that AT&T distributed the benefits in violation of the QDRO and that Davis was not the proper ERISA beneficiary of a certain portion of distributed benefits. Thus, this case is distinguishable from *Central States*, *Guidry*, and *Emard*. In this case, Plaintiff alleges that she was the proper ERISA beneficiary and that AT&T failed to distribute benefits in

---

[1] In *Central States*, the Sixth Circuit concluded that the name(s) on the ERISA beneficiary card controls whom the ERISA plan administrator must pay. 227 F.3d at 677. While his divorce was pending, the plaintiff's husband had substituted his children for his wife as the ERISA beneficiary despite a state court order to maintain the plaintiff as the beneficiary during the pendency of the divorce. *Id.* After changing the beneficiary designation, the husband died. *Id.* The Sixth Circuit concluded that the state court order was preempted by ERISA because it was not a valid QDRO, so the altered beneficiary card controlled and the plaintiff could not be considered the proper ERISA beneficiary. *Id.* at 677-78. In an apparent attempt to avoid injustice, the Sixth Circuit concluded that the plaintiff could nevertheless pursue a state law constructive trust claim against the new beneficiaries after they received the ERISA benefits from the plan. *Id.* at 678-79.

accordance with the QDRO. In contrast to the plaintiff in *Central States*, Plaintiff has failed to demonstrate to this Court that she does not have a viable section 1132(a)(1)(B) claim against AT&T for wrongful distribution of benefits under the QDRO.

The Court wants to stress the fundamental difference between the facts of this case and the facts of *Central States*. Unlike the ERISA plan in *Central States*, the Plan in this case allegedly *violated* ERISA when it wrongfully distributed benefits in violation of the QDRO. Thus, Plaintiff should have a remedy against the Plan under ERISA. In *Central States*, the plaintiff did not have a valid ERISA claim against the plan because the Sixth Circuit determined that the distribution of benefits to the decedent's children was proper under ERISA. If a state law constructive claim against an ERISA plan participant is available in the Fifth Circuit, which this Court does not decide, it would only be available in those rare circumstances where the benefit distribution was proper under ERISA and plaintiff has no ERISA remedy against the plan.[2]

---

[2]In her response to the motion for sanctions, Plaintiff argues that the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.* establishes that her state law constructive trust claim against Davis is not preempted. 486 U.S. 825 (1988). *Mackey* held that ERISA's general preemption statute, 29 U.S.C. § 1144(a), does not preempt state laws permitting garnishment of an ERISA employee welfare benefit plan by a participant's creditor before distribution of the proceeds to the beneficiary. *Id.* at 837. However, the Supreme Court also held that ERISA's anti-alienation provision applicable only to pension plans, 29 U.S.C. § 1056(d)(1), does prohibit the garnishment of ERISA pension benefit plans. *Id.* at 836. The Supreme Court further observed that the Retirement Equity Act of 1984, which added the QDRO provisions to ERISA, removed the anti-garnishment protection from pension plan benefits when a spouse seeks to enforce a domestic support order providing for child support or alimony. *See id.* at 838 ("Among the Act's provisions were amendments to ERISA which insured that the statute's anti-garnishment and pre-emption provisions could not be used to block the enforcement of "qualified domestic relations orders"—generally, court orders providing for child support and alimony payments by ERISA plan participants") (citing 29 U.S.C. §§ 1056(d)(3) & 1144(b)(7)). Section 1144(b)(7) states that ERISA's general preemption statute does not apply to QDROs. Although this Court has no trouble concluding that sections 1056(d)(3) and 1144(b)(7) would allow Plaintiff to go to state court in Missouri to enforce Davis' child support or alimony obligations under the QDRO through garnishment of his pension benefits, the Court does not believe that

The Court questions whether the *Central States* holding even applies in the Fifth Circuit. In cases involving disputes between a non-beneficiary claimant and the named ERISA beneficiary, the Fifth Circuit applies its own federal common law rule. *Manning v. Hayes*, 212 F.3d 866, 874 (5th Cir. 2000). Although the Fifth Circuit held in *Manning* that "federal common law may be determined by reference to analogous state law," the Fifth Circuit has never adopted the constructive trust remedy advocated by the Sixth Circuit. *Id.* Even assuming that the *Central States* holding applies in the Fifth Circuit, which this Court does not decide, the facts of this case do not warrant the invocation of this holding.[3]

---

these two sections allow Plaintiff to assert a constructive trust claim against Davis for pension benefits that were allegedly miscalculated and wrongfully distributed by AT&T. ERISA obligates the plan to distribute benefits in accordance with the QDRO. In cases where the interpretation and distribution of benefits under a QDRO are contested, the Court believes that the remedies available to recover those benefits are determined by federal law, not state law. In cases involving unpaid alimony and child support, the existence of the payment obligation under the QDRO is uncontested; the only issue is whether a state court can enforce that obligation. In contrast to that scenario, this case involves interpretation of the QDRO and alleged violations of ERISA. It would be bizarre to think that the alternate payee under the QDRO has a more potent remedy under state law against a plan participant post-distribution that it has against the plan under ERISA pre-distribution. If this Court adopted Plaintiff's preemption argument, then the ERISA plan that quickly makes an improper distribution of QDRO benefits can simultaneously pass all liability for its ERISA violation onto the plan participant. This would be an absurd result.

[3]The Court notes that in *Manning*, the Fifth Circuit applied its own federal common law rule that a proper ERISA beneficiary may waive his or her entitlement to the proceeds of an ERISA plan providing life insurance benefits only if the waiver is explicit, voluntary, and made in good faith. 212 F.3d at 874. Thus, the designated ERISA beneficiary may waive his or her beneficiary status in a subsequent divorce decree or agreement if the waiver meets this standard. In *Manning*, the Fifth Circuit found no waiver under this standard. *Id.* at 876. Although the Fifth Circuit in *Manning* did not address the question of whether the non-beneficiary claimant might have a constructive trust remedy against the proper ERISA beneficiary, it appears that adoption of this equitable remedy would conflict with the voluntary waiver test employed by the Fifth Circuit. A non-beneficiary claimant's use of a constructive trust to obtain benefits held by a proper ERISA beneficiary certainly could not be characterized as a voluntary waiver of those benefits by that beneficiary.

The Court remains convinced that Plaintiff's constructive trust claim against Davis is preempted by ERISA. If the Court did allow Plaintiff's constructive trust claim to proceed, then the Court would be forced to stay that claim pending resolution of the ERISA issues involved in this case. If Court employed this bifurcated approach, then the Court could find itself caught in the untenable position of holding that AT&T violated ERISA, but Plaintiff must pursue a state law remedy against Davis for AT&T's ERISA violation. This holding would divorce ERISA violation from ERISA remedy, and it would subject Davis to state law liability for AT&T's federal law violation. The Court finds that Plaintiff's state law constructive trust claim "relates to" an ERISA employee benefit plan and is preempted. *See* 29 U.S.C. §1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983) (A state law "relates to" a plan "if it has a connection with or reference to such a plan"). Plaintiff must pursue her ERISA claim against AT&T, and she is limited to the remedies that ERISA provides.[4] Plaintiff's motion for reconsideration is DENIED.

---

[4] In her response to the motion for sanctions, Plaintiff opines that the Court's previous Order denying the motion for reconsideration relied upon "complete relief" as a theory of preemption. To clarify, the Court was not relying on some non-existent "complete relief" theory of preemption in denying Plaintiff's previous motion. Rather, the Court believes that Plaintiff's state law claim against Davis is preempted by section 1144(a). The Court does not believe that sections 1056(d)(3) and 1144(b)(7) of ERISA allows Plaintiff to prosecute any state law claim related to her QDRO that she desires so long as the benefits have already been distributed by the Plan. The Court believes that Plaintiff's preemption argument is based on an overly-expansive reading of section 1144(b)(7). The Court merely speculated in its prior Order that "there is a scarcity of law in regards to the preemption issue raised by Plaintiff because her state law constructive trust claim against Davis is unnecessary to afford her complete relief." The Court used the phrase "complete relief" as a synonym for relief against the Plan under ERISA, not the relief sought by Plaintiff under state law. In order the avoid confusion, the Court will not use this terminology in the future. After further research, the Court believes that this scarcity of law is also related to the fact that QDRO disputes usually involve the prospective distribution of benefits that are currently held by the plan. *See, e.g., Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 611 (5th Cir.1999) (Dial seeks benefits that, in the absence of QDRO, he is

**II.     Defendants' motion for sanctions is DENIED.**

Defendants AT&T Pension Benefit Plan, AT&T Inc., and ACS HR Solutions, LLC (collectively "AT&T") argue that sanctions against Plaintiff are warranted under 29 U.S.C. § 1927 because Plaintiff has multiplied the proceedings in this case "unreasonably and vexatiously." *See Travelers Ins. Co. v. St. Judge Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994). Defendants argue that the legal arguments contained in Plaintiff's motion for reconsideration are frivolous. Defendants also argue that Plaintiff improperly disclosed the April 23rd letter to the Court in violation of Rule 408(a) of the Federal Rules of Evidence and improperly contacted AT&T's in-house counsel.

The motion for sanctions is DENIED. The Court finds that Plaintiff's motion for reconsideration was not frivolous because the Court had not distinguished the numerous cases cited by Plaintiff in its previous Order denying her motion for interlocutory appeal. The Court does not believe that Plaintiff filed her motion for reconsideration recklessly or in bad faith. Although the Court may disagree with Plaintiff's legal arguments, the Court believes that Plaintiff was merely attempting to preserve certain issues for appeal. The Court will accept Plaintiff's counsel's explanation that he contacted Mr. Drummond, AT&T's in-house counsel, because he believed that Drummond represented the Plan and Mr. Huber represented AT&T. The Court notes that Drummond is listed as counsel of record for SBC Pension Benefit Plan on the docket sheet. Finally, the Court does not believe that Plaintiff's counsel's conduct regarding the April 23rd letter violated Rule 408(a). Defendant argues that Plaintiff attempted to use the letter to bolster the validity of

---

due; paying him those benefits is among the Plan administrators' ERISA-governed responsibilities. Dial's suit was proper under ERISA").

Plaintiff's claims against the Defendants. The Court disagrees. Plaintiff's counsel requested that the Plan waive all of its defenses to her QDRO claim and "step into Mr. Davis's shoes as the defendant." Not surprisingly, AT&T rejected this offer. The submission of this letter to the Court does not warrant the imposition of sanctions.

It is so ORDERED.

SIGNED this 30th day of April, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE